IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH A. PRICE,

        Plaintiff,

v.                              Civil Action 2:18-cv-128
                                      Judge James L. Graham
                                      Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Joseph A. Price, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed his application for DIB in March 2014, alleging that he was disabled beginning August 29, 2012. (Doc. 8, Tr. 314–17, PAGEID #: 319–42). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on November 18, 2016. (Tr. 184–216, PAGEID #: 1163–95). On January 30, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 11–26, PAGEID #: 990–1005). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–4, PAGEID #: 980–83).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on February 16, 2018. (Doc. 1). Plaintiff filed his Statement of Errors (Doc. 9) on August 3, 2018.

Defendant filed an Opposition (Doc. 10) on September 17, 2018, and Plaintiff filed his Reply (Doc. 11) on October 2, 2018. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

Plaintiff testified that he injured his back at work in 2011 and was unable to work following that injury. (Tr. 185–86, PAGEID #: 1164–65). Plaintiff testified that, despite multiple surgeries, he continues to suffer from chronic pain that affects his ability to stand, walk, and sit. (Tr. 186–89, PAGEID #: 1164–68). Plaintiff also reported a history of drug and alcohol abuse that has required him to attend rehabilitation. (*Id.*).

Plaintiff also testified that he suffers from depression. (Tr. 187, PAGEID #: 1166). According to him, some days his depression has been so severe that he has not wanted to get out of bed or leave his bedroom. (*Id.*). Plaintiff stated that he has not wanted to take any medication for his depression or for any other mental health issues. (Tr. 187–88, PAGEID #: 1166–67). According to him, he took medication for depression at one point but did not like the way it made him feel. (Tr. 197, PAGEID #: 1176). Plaintiff did, however, see a mental health counselor once or twice a month. (*Id.*). Plaintiff testified that his physical impairments were what kept him "from being able to work more than [his] mental" impairments. (Tr. 205, PAGEID #: 1184).

For a hobby, Plaintiff indicated that he liked to "tinker" around his garage and work on his motorcycles a few times a month. (Tr. 189–90, PAGEID #: 1168–69). He estimated that he typically sweeps the garage floor and polishes his bike for 15–20 minutes at a time. (Tr. 191–92, PAGEID #: 1170–71).

With respect to activities of daily living, Plaintiff testified that he can do some laundry, wash the dishes, and sweep and mop the floors. (Tr. 192, PAGEID #: 1171). Plaintiff testified that he can do the dishes for about 10 minutes in which time he could get about half a load done.

(*Id.*). He further testified that he was not able to perform these activities regularly. (Tr. 194, PAGEID #: 1173). Plaintiff reported being able to drive a car and, occasionally, a motorcycle. (Tr. 195, PAGEID #: 1174).

Vocational Expert Dr. Michael Klein (the "VE") testified as an impartial witness (Tr. 207–08, PAGEID #: 1186–87). The ALJ asked the VE several hypothetical questions. First, he asked:

> Hypothetical 1 light work as provided by the regulations, push or pull is limited as per exertional weight limits, never climbing ladders, ropes, or scaffolds. Occasional for climbing ramps, or stairs, balancing, stooping, kneeling, crouching, crawling.
> Goal based production work measured by end result not pace work. Work allowed off task five percent of the day, work in a low stress job defined as only occasional changes in the work setting. Can the hypothetical individual perform any of the past jobs?

(Tr. 209, PAGEID #: 1188). The VE concluded that the hypothetical individual could potentially perform his or her past work as a short order cook and that there were other jobs the individual could potentially perform, including marker/labeler (5,000 state, 180,000 nationally), racker (4,000 state, 10,000 nationally), and cleaner (8,000 state, 175,000 nationally). (Tr. 209–10, PAGEID #: 1188–89).

Next, the ALJ stated, "Hypothetical number 2 [is] the same as hypothetical number 1 exception some additional limitations of interaction with the public, none. Interaction with co-workers with supervisors occasional, work where others can be around but he's more off by himself. I think the past jobs would be out. Am I correct?" (Tr. 210, PAGEID #: 1189). The VE opined that the individual's past jobs would not be possible with those additional limitations, but that the individual could still work as a marker/labeler, racker, or cleaner. (*Id.*).

The ALJ continued, "Hypothetical number 3 [is] the same as hypothetical number 1 except lift and/or carry 10 pounds occasionally, lift and/or carry five pounds frequently, stand

3

and/or walk two hours out of an eight-hour day, and sit six hours out of an eight-hour day. Past jobs are out again?" (*Id.*). The VE agreed and opined that the individual could nonetheless work as a porter/clerk (4,000 state, 140,000 nationally), lens inserter (5,000 state, 150,000 nationally), or a charge account clerk (8,000 state, 100,000 nationally). (Tr. 210–11, PAGE ID#: 1189–90).

For his last hypothetical, the ALJ stated:

Hypothetical number 4 [is] the same as hypothetical number 3 except a couple of different limitations. Work in a low stress job defined as only occasional decision making required, work where others may be around where's [sic] he off by himself, no interaction with the public, interaction with co-workers is occasional and supervisors is occasion [sic]. Can the hypothetical individual do any work? I assume past work is again out.

(Tr. 211, PAGEID #: 1190). The VE opined that the individual could not perform past work but would be able to perform work as an account clerk, lens inserter, or surveillance system monitor (2,000 state, 105,000 nationally). (*Id.*).

Following up on the ALJ's hypotheticals, counsel for Plaintiff questioned the VE:

If we were to look at either the light or the sedentary hypotheticals and the examples that were provided there if I were to state that within the confines of the normal break schedule of two 15 minute breaks and one 30 minute our individual might be able to sustain these activities but would have to be afforded the opportunity to recline during his regular break periods or are we into the realm of accommodation here?

(Tr. 215, PAGEID #: 1194). The VE stated, "I think accommodation here." (*Id.*).

**B.     Relevant Medical Background**

Plaintiff's arguments concern his mental impairments only. Consequently, the Court examines the relevant medical evidence pertaining to the same.

*1.     Treatment Notes and Opinions of Treating Sources*

From 2013 through 2016, Plaintiff attended counseling sessions at Weinstein & Associates, Inc. to treat his depression. (Tr. 1025–1148, PAGEID #: 854–977). Specifically,

4

Plaintiff attended counseling with William Froilan, Ph.D.; Lee Roach, Ph.D.; and Holly Conant, LISW. (*Id.*). During that same time period, Dr. Froilan, Dr. Roach, and Ms. Conant completed a number of evaluations to support Plaintiff's worker's compensation claim. (Tr. 514–25, PAGEID #: 342–53; Tr. 596–611, PAGEID #: 424–39; Tr. 622–25, PAGEID #: 450–453; Tr. 733–839, PAGEID #: 562–668). In December 2013, Dr. Froilan found that Plaintiff experienced marked limitations in his activities of daily living and adaption and moderate limitations in social functioning and concentration, persistence, and pace because of his mental impairments. (Tr. 515, PAGEID #: 343). Dr. Froilan opined that Plaintiff's prognosis was fair. (*Id.*). During the relevant period, Dr. Froilan, Dr. Roach, and Ms. Conant consistently found that Plaintiff's prognosis was fair and that he had mild, marked, or moderate limitations in all four categories used to evaluate Plaintiff's functional status. (Tr. 516–25, PAGEID #: 344–53; Tr. 596–611, PAGEID #: 424–39; Tr. 622–25, PAGEID #: 450–453). In June 2013, Plaintiff presented at the emergency room for a psychiatric evaluation and treatment for polysubstance abuse. (Tr. 466, PAGEID #: 294). He stated that he drank 30 beers or a bottle of whiskey a day. (Tr. 468, PAGEID #: 296). He also indicated that he used Vicodin daily and occasionally used cocaine. (*Id.*). Plaintiff reported being depressed and feeling worthless and that substance abuse exacerbated his depression. (*Id.*). He stated that he had not received any prior psychiatric treatment and denied any suicidal ideation. (*Id.*).

On August 8, 2014, Plaintiff presented at the emergency room with suicidal ideation and was hospitalized for several days. (Tr. 526–67, PAGEID #: 354–95). At the time of admission, Plaintiff was intoxicated, and a toxicology screen was positive for cocaine and marijuana. (Tr. 527–28, PAGEID #: 355–56). Treatment notes indicate that his short-term memory, long-term memory, attention, and concentration were all intact. (Tr. 530–31, PAGEID #: 358–59).

5

Plaintiff was diagnosed with Depression NOS and alcohol dependence. (Tr. 531, PAGEID #: 359).

In August 2015, Dr. Roach completed a Medical Source Statement as to Ability to Perform Work Related Activities (Mental). (Tr. 622–25, PAGEID #: 450–453). Dr. Roach found that Plaintiff suffered from moderate or marked limitations in social interaction, sustained concentration and persistence, and adaption, and that these restrictions had existed and persisted since August 2012. (*Id.*). He further concluded that Plaintiff was "likely to have partial or full day unscheduled absences from work occurring 5 or more days per month due to the diagnosed conditions and/or side effects of medication" and that Plaintiff's condition was "likely to deteriorate if he . . . is placed under stress, particularly the stress of an 8 hour per day, 5 days per week job." (Tr. 624, PAGEID #: 452).

In January 2016, Dr. Roach and Ms. Conant, drafted a letter analyzing whether Plaintiff had reached maximum medical improvement for his depression. (Tr. 840–42, PAGEID #: 669–71). They noted that Plaintiff continued to struggle with symptoms of depression, including "depressing mood, difficulty sleeping, fatigue, little interest in previously enjoyable activities, issues with memory, difficulty coping with stress, trouble sleeping, and irritability." (Tr. 840, PAGEID #: 669). Dr. Roach and Ms. Conant opined that Plaintiff would continue to improve with additional treatment. (*Id.*). They observed that his activities of daily living and his persistence, concentration, and pace were moderately impaired by his depression. (*Id.*). Further, they found that Plaintiff's social functioning had improved since starting treatment and that Plaintiff had reconnected with friends and family and had started a new relationship. (Tr. 841, PAGEID #: 670). Dr. Roach and Ms. Conant acknowledged that Plaintiff still struggled with social functioning to the extent he became irritable as a result of the pain from his injury. (*Id.*).

With respect to Plaintiff's ability to adapt to stress in a work environment, they stated that Plaintiff's depression was improving but still prevented him from returning to work. (*Id.*). Their case notes "document[ed] a consistent pattern of gradual improvements in [Plaintiff's] psychological condition." (*Id.*).

2.  *Worker's Compensation Psychological Evaluation*

In August 2013, Plaintiff underwent a psychological evaluation with Dr. Marian Chatterjee as part of his claim for worker's compensation. (Tr. 471–75, PAGEID #: 299–303). Dr. Chatterjee observed that Plaintiff presented as mildly depressed and that his initial affective state was constricted. (Tr. 471, PAGEID #: 299). Plaintiff reported that he felt worthless and was unable to work or perform various activities at home. (*Id.*). He further indicated that he did not bathe or dress regularly and that he spent most of his time on the couch at home. (*Id.*).

Plaintiff reported no history of psychological treatment before his back injury at work. (Tr. 472, PAGEID #: 300). Due to pain and boredom, however, Plaintiff began drinking heavily and became increasingly depressed. (*Id.*). He stated that he cried a lot while sober and often just stayed in the house because he was afraid to leave. (*Id.*).

Based on her mental status examination, Dr. Chatterjee concluded that Plaintiff's short-term concentration and attention were fair, his short-term memory was grossly intact, and his long-term memory was intact as well. (Tr. 473, PAGEID #: 301). Dr. Chatterjee further found that Plaintiff's judgment and insight "were marginal" and that a "Beck Depression Inventory-II indicated depression in the severe range." (*Id.*). Dr. Chatterjee ultimately opined that Plaintiff suffered from Depressive Disorder, NOS for which she recommended psychiatric counseling and medication. (*Id.*).

3.  *SSA Psychological Evaluation*

On September 9, 2014, James Spindler, M.S., completed a psychological evaluation of Plaintiff. (Tr. 588–95, PAGEID #: 416–23). Plaintiff appeared to be nervous and mildly depressed during the evaluation. (Tr. 591, PAGEID #: 419). He reported that his depression was a result of his chronic pain and being unable to work. (*Id.*). Mr. Spindler observed that Plaintiff's cognitive functioning was average and that he demonstrated adequate insight and judgment. (*Id.*). Plaintiff reported managing his finances and shopping for necessities. (*Id.*). He indicated that his ex-wife handled most of the housework because of his chronic pain. (*Id.*). For hobbies, Plaintiff reported enjoying fishing, hunting, and riding bikes but that he had not gone hunting or fishing that year. (Tr. 592, PAGEID #: 420). Plaintiff also indicated that he socialized with a small group of friends. (*Id.*). Mr. Spindler diagnosed Plaintiff with Alcohol Use Disorder – Severe, Unspecified Depressive Disorder – Mild, Unspecified Anxiety Disorder – Mild, and Cannabis Use Disorder – Mild. (*Id.*). In his functional assessment, Mr. Spindler opined:

> [Plaintiff] seems capable of understanding, remembering and carrying out instructions in most job settings. . . . He appears to have the mental ability to sustain a working pace and to maintain a level of attention and concentration that would be sufficient for most job settings. . . . Claimant reports that when he was employed he received good job performance ratings and had no major problem getting along with others. He seems likely to respond appropriately to supervision and to coworkers. . . . [Plaintiff] seems capable of responding appropriately to routine work pressures.

(Tr. 593, PAGEID #: 421).

    *4.    State Agency Psychological Consultants*

Later that month, Karla Voyten, Ph.D., a state agency psychological consultant, conducted an initial review at the request of the SSA and concluded that Plaintiff's depression and anxiety were non-severe impairments. (Tr. 224–25, PAGEID #: 47–48). She found that Plaintiff had mild restrictions in his activities of daily living and mild difficulties in maintaining

8

concentration, persistence, or pace. (*Id.*). She further found that Plaintiff had no difficulties in maintaining social functioning and no repeated episodes of extended decompensation. (*Id.*).

In December 2014, Jaime Lai, Psy. D., a state agency psychological consultant, conducted a review at the reconsideration level. (Tr. 232–47, PAGEID #: 55–70). Like Dr. Voyten, Dr. Lai concluded that Plaintiff's depression and anxiety were non-severe impairments. (Tr. 239, PAGEID #: 63). Dr. Lai found that Plaintiff had mild restrictions in his activities of daily living and mild difficulties in maintaining social functioning. (*Id.*). Further, Dr. Lai noted Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace but no repeated episodes of decompensation. (Tr. 242, PAGEID #: 65).

Turning to Plaintiff's Mental Residual Function Capacity Assessment, Dr. Lai first opined that Plaintiff had no limitations with respect to understanding and memory. (Tr. 242, PAGEID #: 65). Second, Dr. Lai concluded that Plaintiff had, at most, moderate limitations with respect to sustained concentration and persistence. (Tr. 242–43, PAGEID #: 65–66). Dr. Lai asserted that Plaintiff was moderately limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period." (Tr. 243, PAGEID #: 66). Dr. Lai explained that Plaintiff's mental health issues "may interfere with [his] ability to concentrate on tasks for extended periods of time. [He] can complete tasks with regularly scheduled breaks" and "would benefit from some flexibility in his break and work schedule during periods of increased symptoms." (*Id.*). Third, Dr. Lai found that Plaintiff had no significant social interaction limitations but that his "[m]ood symptoms and substance abuse would be expected to produce some limitations in the capacity for superficial interactions with others." (Tr. 243–44, PAGEID #: 66–67). Fourth, Dr. Lai opined that Plaintiff had no

9

significant adaptation limitations but that his "[d]epression and substance use may reduce [his] capacity to adjust to major changes in the workplace setting. He would benefit from access to supervisory support during times of change." (Tr. 244, PAGEID #: 67).

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 29, 2012, the alleged onset date. (Tr. 13, PAGEID #: 992). The ALJ determined that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, spondylosis, osteoarthritis, depressive disorder, anxiety disorder, and alcohol dependence. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 13–15, PAGEID #: 992–94).

Specifically, the ALJ concluded that Plaintiff's mental symptomatology did not result in at least two limitations or one extreme limitation in the areas of activities of daily living, social functioning, concentration/persistence/pace, or episodes of decompensation as required in "paragraph B" in 12.00 of the Listing of Impairments. (Tr. 13–14, PAGEID #: 992–93). Rather, the ALJ found Plaintiff had moderate limitations in his ability to understand, remember, or apply information; moderate difficulties interacting with others; moderate limitations with regard to concentrating, persisting, or maintaining pace; and mild limitations in his ability to adapt or manage himself. (Tr. 14, PAGEID #: 993). Thus, the ALJ held that Plaintiff did not satisfy the "paragraph B" criteria. (*Id.*). Similarly, the ALJ concluded that Plaintiff did not satisfy the "paragraph C" criteria. (Tr. 14–15, PAGEID #: 993–94).

As to Plaintiff's RFC, the ALJ opined:

[T]he claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant can lift and/or carry 10 pounds occasionally and 5 pounds frequently, stand and/or walk 2 hours out of an 8-hour day, sit 6 hours out of an 8-hour day, push/pull is

> limited as per weight limits, he can never climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch or crawl. In addition, the claimant is limited to goal based production measured by end result not pace work, will be off task for 5% of workday, and needs work in a low stress job, defined as only occasional changes in the work setting.

(Tr. 15, PAGEID #: 994).

After consideration of the evidence, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 16, PAGEID #: 995). The ALJ elaborated on how he reached that finding:

> [T]he claimant is able to participate in a range of activities, such as light housework, hanging out with friends, occasionally riding his motorcycle, driving, shopping, and working on projects. Indeed, he is likely less active than prior to his injury but his activities certainly show that he could perform a range of sedentary work as described above. Further, there are some inconsistencies in the claimant's behavior and his allegations. For instance, he reports disabling mental conditions, but does not use any psychotropic medication. The record also indicates, as discussed above, that he has shown exacerbated pain behavior.

(Tr. 24, PAGEID #: 1003).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account

whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff raises two errors to the Court. (Doc. 9). First, Plaintiff argues that the ALJ erred by improperly accounting for the limitations recognized by a state agency psychological consultant, Dr. Lai. (Doc. 9 at 8–11; Doc. 11 at 2–4). Second, Plaintiff contends that the ALJ erred because he improperly evaluated Plaintiff's mental RFC. (Doc. 9 at 11–15; Doc. 11 at 4–5). The Court addresses each of these alleged errors in turn.

#### A. Dr. Lai

Plaintiff contends that the ALJ erred in his RFC by failing to account for all of Dr. Lai's credited limitations. Dr. Lai opined that Plaintiff would benefit from flexibility in his break and work schedule and that Plaintiff would need supervisory support during times of change. (Doc. 9 at 9). Plaintiff emphasizes that the ALJ concluded that Dr. Lai's opinions were entitled to partial weight but failed to explain why those limitations were not included in his RFC. (*Id.* at 9–10). According to Plaintiff, this omission is significant because those limitations would have been work preclusive and thus would have entitled Plaintiff to an award of benefits. (*Id.* at 10–11).

"Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs," ALJs are required "to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of no examining physicians and psychologists." SSR 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). ALJs "are not bound by findings made by State agency

or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*

"Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r*, 618 F. App'x 267, 275 (6th Cir. 2015) (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–CV–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)). Ultimately, RFC assessments are an issue "reserved to the Commissioner in 20 CFR 404.1527(e) and 416.927(e)." SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996).

The ALJ properly evaluated Dr. Lai's opinion. Based on his review of Dr. Lai's assessment and the record, he concluded that Dr. Lai's opinion was entitled to "some partial weight." (Tr. 23, PAGEID #: 1002). The ALJ disregarded Dr. Lai's opinion that Plaintiff might be limited to superficial interactions with others because it was inconsistent with the record and Dr. Lai's own findings. (*Id.*). But the ALJ credited the other limitations recognized by Dr. Lai, namely, "that the claimant would need assistance during times of change and some ability to be off task." (*Id.*). Significantly, the ALJ stated that those limitations "are generally consistent with the above residual functional capacity *which has been set forth in more vocationally relevant terms*." (*Id.* (emphasis added)). In other words, the ALJ found that Dr. Lai's limitations that were supported by the record were already addressed by his RFC assessment.

A review of the ALJ's RFC corroborates this conclusion. Relevant here, the ALJ limited Plaintiff to "goal based production measured by end result not pace work, will be off task for 5% of workday, and needs work in a low stress job, defined as only occasional changes in work setting. (Tr. 15, PAGEID #: 994). Limiting Plaintiff to goal-based production and allowing him

to be off task for 5% of the workday addressed Dr. Lai's opinion that Plaintiff might need some ability to be off task. And limiting Plaintiff to a low stress job with only occasional changes in work setting addressed Dr. Lai's opinion that Plaintiff might need assistance during times of change.

True, the ALJ did not adopt verbatim Dr. Lai's opinion. But the ALJ was not required to do so. *See Reeves*, 618 F. App'x at 275 (citing *Harris*, 2014 WL 346287, at *11). Instead, the ALJ acknowledged Dr. Lai's opinion, explained the weight he assigned to that opinion, and concluded that the limitations identified by Dr. Lai that were supported by the record were incorporated into his RFC assessment. (Tr. 23, PAGEID #: 1002). That is all that was required here. *See generally* SSR 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996).

*Stacey v. Commissioner of Social Security* does not alter the Court's conclusion. Plaintiff contends that the ALJ "credited" and "relied" on Dr. Lai's findings and was therefore "required to explain why these limitations were being excluded." (Doc. 9 at 10 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x. 517, 518–20 (6th Cir. 2011)). In *Stacey*, an examining physician, Dr. Randolph, opined that the plaintiff "was permanently limited to performing sedentary work—an assessment that, if accepted, likely would have rendered Stacey disabled and entitled him to Social Security Disability Insurance benefits." 451 F. App'x at 518. "The ALJ did not explain why he (apparently) rejected Dr. Randolph's assessment of Stacey's physical capabilities in favor of Dr. McCloud's, [a non-examining state agency physician]." *Id.* at 519. The Court acknowledged that the ALJ did not have to "give good reasons" for the weight he assigned to Dr. Randolph's opinion, but emphasized that he was obligated to "say enough to allow the appellate court to trace the path of his reasoning." *Id.* (internal citations and quotation marks omitted). Because the ALJ failed to offer any explanation for his decision to disregard Dr. Randolph's

14

opinion, the Court found that his decision failed to satisfy that standard. *Id.* at 519–20.

*Stacey* turned on the fact that the ALJ discounted a medical source opinion and failed to explain his decision to do so. In contrast here, rather than disregarding the opinion of Dr. Lai, the ALJ incorporated Dr. Lai's limitations that were supported by the record into his RFC using "more vocationally relevant terms." (Tr. 23, PAGEID #: 1002). As a result, the ALJ did not err.

### B. RFC Analysis

Next, Plaintiff argues that, "[i]nstead of relying on the medical evidence of record documenting greater functional limitations, the ALJ improperly discredited every single mental health source of record, on his way to crafting an inaccurate mental residual functional capacity." (Doc. 9 at 11–12). Plaintiff emphasizes, "the ALJ failed to provide "good reasons" for rejecting the treating source opinions of record." (*Id.* at 14).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence

15

must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

The Court finds that substantial evidence supports the ALJ's mental RFC. While Plaintiff insists that "every single mental health source of record" supports a more restrictive mental RFC, (Doc. 9 at 12), the record is more mixed than Plaintiff acknowledges. Plaintiff testified that his physical impairments were what kept him "from being able to work more than [his] mental" impairments. (Tr. 205, PAGEID #: 1184). Significantly, Plaintiff did not take any medication for his depression or any other mental health issues. (Tr. 187–88, PAGEID #: 1166–67). Evidence regarding Plaintiff's activities of daily living and social functioning supported the conclusion that he could work with certain limited restrictions. (*See, e.g.*, Tr. 192, PAGEID #: 1171 (Plaintiff testifying that he could do some laundry, wash the dishes, and sweep and mop the floors); Tr. 195, PAGEID #: 1174 (Plaintiff testifying that he could drive a car and, occasionally, a motorcycle); Tr. 591–92, PAGEID #: 419–20 (Plaintiff reporting to Mr. Spindler that he managed his finances, shopped for basic necessities, socialized with friends, and enjoyed fishing, hunting, and riding bikes); Tr. 224–25, PAGEID #: 47–48 (Dr. Voyten opining that Plaintiff had mild limitations in his activities of daily living and no limitations in terms of social functioning); Tr. 841, PAGEID #: 670 (Dr. Roach and Ms. Conant opining that Plaintiff's social functioning had improved since starting treatment and that Plaintiff had reconnected with friends and family and had started a new relationship)). So did evidence regarding his understanding and memory, and concentration, pace, and persistence. (*See, e.g.*, Tr. 224–25, PAGEID #: 47–48 (Dr. Voyten finding that Plaintiff mild difficulties in maintaining concentration, persistence, or pace); Tr. 593, PAGEID #: 421 (Mr. Spindler opining that "[Plaintiff] seems capable of understanding, remembering and carrying out instructions in most job settings. . . . He appears to have the

mental ability to sustain a working pace and to maintain a level of attention and concentration that would be sufficient for most job settings"); Tr. 473, PAGEID #: 301 (Dr. Chatterjee opining that Plaintiff's short-term concentration and attention were fair, his short-term memory was grossly intact, and his long-term memory was intact as well); Tr. 530–31, PAGEID #: 358–59 (treatment notes indicating that Plaintiff's short-term memory, long-term memory, attention, and concentration were all intact)). Taken together, the evidence of record and the evidence the ALJ relied on is "more than a scintilla of evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (internal quotation marks omitted).

Plaintiff has done a thorough job identifying evidence that supports a more restrictive mental RFC. (Doc. 9 at 12–14). But the Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Plaintiff's "good reasons" argument is similarly unpersuasive. Plaintiff is correct that, if an ALJ discounts a treating physician's opinion, he or she is "procedurally required to give 'good reasons' for discounting" those opinions. *Reeves*, 618 F. App'x at 273 (quoting *Rogers*, 486 F.3d at 242). Good reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Reeves*, 618 F. App'x at 273 (quoting *Rogers*, 486 F.3d at 242).

A review of the ALJ's decision makes clear that he satisfied that standard. For example, in discounting the opinion of Dr. Frolian, the ALJ explained:

> Dr. Frolians' [sic] opinions have been afforded little weight for several reasons. First, they are inconsistent with the evidence as a whole. For instance, Dr. Frolian noted that the claimant had marked limitations in things such as social interaction, activities of daily living and ability to respond to stressful situations, yet the claimant reported no difficulty with personal care, and he is able to shop, visit friends, attend appointments and take medications without reminders. Treatment

17

> notes also do not support marked limitations in functional areas, as the claimant was noted to be only "mildly" depressed, often demonstrated normal or mild findings related to concentration, insight, memory and judgment and often the social worker noted mild findings during her sessions. Next, the record contains limited medical evaluations from Dr. Frolian. Dr. Frolian noted that the claimant "reported moderate to marked disruption of his functional capacities." Yet as noted above the claimant was able to do a range of activities that is not consistent with this report, including riding a motorcycle and working on a project for a nursing home. Additionally, Dr. Frolian did not set forth any specific functional limitations due to the claimant's mental impairments. Last, Dr. Frolian found that the claimant was temporarily not released to work for limited three month period relevant to the claim for workers' compensation. As noted above, a decision by other agencies about whether the claimant is disabled is based on its own rules and thus is not binding on the Commissioner.

(Tr. 21–22, PAGEID #: 1000–01). While Plaintiff asserts that reasons given by the ALJ for discounting the testimony of Dr. Frolian and others were "cursory and inconsistent," (Doc. 9 at 14), the Court respectfully disagrees. As demonstrated by the above analysis, the ALJ identified specific inconsistencies between Dr. Frolian's opinion and the medical record and noted a lack of evidentiary support for Dr. Frolian's conclusions. (*See* Tr. 21–22, PAGEID #: 1000–01). These are acceptable bases to discount opinion evidence. *See* C.F.R. § 404.1527(d)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(d)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). The ALJ did the same for the other treating and non-treating sources. (*See* Tr. 21–23, PAGEID #: 1000–02). As a result, the ALJ did not err in his RFC analysis.

IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  October 24, 2018                                /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE